UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RS-ANB FUND, LP,<br><br>    Plaintiff/Counterdefendant,<br><br>    v.<br><br>KMS SPE LLC, LIZ AIR 6 L.L.C.,<br>JERALD M. SPILSBURY, KINGSTON<br>PROPERTIES L.P., MIKE KINGSTON,<br>PAUL E. AVERY, BERT BOECKMANN<br>AND JANE BOECKMANN, TRUSTEES<br>OF THE BOECKMANN FAMILY<br>REVOCABLE TRUST, ANDARY<br>INVESTMENTS 2 LLC and RGRCM LLC,<br><br>    Defendants/Counterclaimants. | Lead Case No. 4:11-cv-00175-BLW<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |
| KMS SPE, LLC<br><br>    Plaintiff/Counterdefendant,<br><br>    v.<br><br>RS-ANB Funds, LP,<br><br>    Defendant/Counterclaimant. | Consolidated Case No. 4:11-cv-00179-BLW |

RS-ANB Funds, LP,

      Plaintiff,

      v.

DAVID ORVILLE KINGSTON,

      Defendant.

Consolidated Case No. 4:11-cv-00179-BLW

## INTRODUCTION

The Court has before it a motion for judgment on the pleadings (Dkt. 10), filed in consolidated action 4:11-cv-00179-BLW.  In Case No. 4:11-cv-00179-BLW,  KMS SPE, LLC sued RS-ANB Funds, LP, seeking declaratory and other relief in relation to a Participation Agreement dated April 1, 2009, to which both KMS SPE, LLC and RS-ANB Fund, LP, are parties. (Docket No. 1-8.)  Also parties to the agreement are a group of investors who are defendants in related case, Case No. 4:11-cv-00175-BLW.  Those investors, including Kingston Properties, L.P., which intervened in Case No. 4:11-cv-00179-BLW, and David Kingston, a defendant in a consolidated bankruptcy adversary proceeding, have also filed responses to the motion for judgment on the pleadings.

The Court has reviewed the parties' submissions and determined that oral argument will not significantly assist the decisional process.  For the reasons set forth below, the Court will grant the motion for judgment on the pleadings.

# BACKGROUND[1]

In January 2009, ANB Ventures, LLC acquired the assets of a distressed bank seized by the Federal Deposit Insurance Corporation (FDIC).  The loan portfolio cost $24 million, and to accomplish its acquisition several parties contributed to the purchase in exchange for a profit participation interest.  A managing company, KMS SPE, LLC, was formed simultaneously to administer, service, and liquidate the assets of the portfolio – it receives distributions from ANB Ventures, which it then distributes to the investors.

In early 2009, RS-ANB Fund, LP approached the original investors about becoming an investor in the portfolio.  The original investors agreed to sell 25% of their participation interest to RS for $12 million.   The original investors, KMS, and RS executed a Participation Agreement outlining the terms of the sale and distribution of the profit proceeds to RS.  *See Participation Agreement*, Dkt. 11-1.  Under the Agreement, RS paid $12 million to the original investors (deemed the "Current Investors") in exchange for a portion of the Current Investors' "right, title and interest" to participate in the distributions.  *Id.* § 4.1.

A dispute between the original investors and RS about the effect of Section 4.5 of the Agreement – the "Payments" section – arose not long after the parties executed the agreement.   This dispute drives these consolidated actions.   Section 4.5 entitles RS to

---

[1] The background is derived from the Amended Complaint unless otherwise noted.

receive monthly payments when KMS has earnings available for distribution.   It

provides:

> Payments shall be paid monthly from the proceeds of the Net Company's
> Share less 15% (the "Gross Proceeds") to the extent they are available.
> Each monthly payment [to RS] shall be as follows (Participant's Monthly
> Payment):
>
> > ➢ 50% of the Gross Proceeds until [RS] receives $12,000,000;
> >
> > ➢ thereafter, 25% of the Gross Proceeds (Participant's Monthly
> > Payment).

*Id.* ¶ 4.5.

In accordance with this section, KMS initially distributed 50% of the Gross

Proceeds to the original investors and 50% to RS.  KMS continued this distribution

allotment until RS received $12 million (the amount it paid for its participation interest).

Once RS received $12 million, however, KMS did not distribute 25% of the Gross

Proceeds.  Instead, KMS began distributing less than 25% of the earnings to offset the

phase when RS received 50% of the earnings.  Otherwise, according to KMS and the

original investors, RS's participation payments would exceed the 25% participation

interest RS purchased from the original investors.

This is the crux of the parties' dispute.  RS argues that the plain and unambiguous

language of the Payments section mandates that it receive monthly payments equal to (1)

50% of Gross Proceeds until RS receives $12 million; and (2) thereafter, 25% of the

Gross Proceeds.  The original investors respond that the Agreement must be read as a

whole.  Applying that canon, the original investors argue, it becomes clear that the 25%

purchase provisions, by which RS agreed to purchase 25% of the original investors'

"right, title and interest" to participate in the distributions, conflicts with the Payments

section, which entitles RS to monthly payments equaling more than  25% of original

investors' right to total distributions.   David Kingston offers an illustration to clarify this

point:

> To illustrate, assume that SPE, over its lifespan, has $60 million of
> distributable earnings. In the 50% phase, RS would receive $12 million of
> the first $24 million of distributable earnings. If RS then were paid 25% of
> the remaining $36 million of distributable earnings, its total share of SPE's
> $60 million in distributable earnings would be $21 million ($12 million
> from the 50% phase plus $9 million from the 25% phase). That is 35% of
> the total distributions, far more than the 25% interest RS bought. For RS's
> overall distribution percentage to be brought in line with its 25% interest,
> RS should receive, in total, $15 million of the $60 million distributed by
> SPE.  Accordingly, of the $36 million to be distributed after the 50% phase,
> its share is $3 million (a share that, by mathematical necessity, is less than
> 25%).
>
> *David Orville Kingston's Resp.* at 5, Dkt. 66.

The original investors contend that Section 4.5 "was intended to accelerate

RS's return of its $12 million investment by providing for the 50% phase, but not to both

accelerate RS's return of its investment and grant RS more than 25% of the Current

Investors' rights to receive distributions from [KMS]."  *David Kingston's Opp'n* at 6,

Dkt. 66.   By filing its declaratory judgment action, KMS seeks guidance from the Court

on how to distribute the portfolio's earnings now that the 50% phase has ended.  RS

seeks judgment on the pleadings on KMS' claims, arguing that the Participation

Agreement is unambiguous as a matter of law.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for

judgment on the pleadings "after the pleadings are closed." Judgment is appropriate when

the moving party establishes on the face of the pleadings that no material issue of fact

remains to be resolved and that it is entitled to judgment as a matter of law. *Hal Roach*

*Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1990). In

ruling on such a motion, the court must accept the allegations of the non-moving party as

true. *Id.*

If the court looks to evidence beyond the pleadings, the motion must be converted

into one for summary judgment. Fed. R. Civil P. 12(d). But the court may consider

attachments to the complaint and documents referred to in the complaint though not

attached to it, where authenticity is not in question. *Hal Roach Studios,* 896 F.2d at 1555

n. 19; *Townsend v. Columbia Operations,* 667 F.2d 844, 848-49 (9th Cir. 1982).

## ANALYSIS

"The initial inquiry into whether a ... legal instrument is ambiguous presents a

legal question, over which this court exercises free review." *Chubbuck v. City of*

*Pocatello,* 899 P.2d 411, 414 (1995). "An instrument which is reasonably subject to

conflicting interpretation is ambiguous." *Latham v. Garner,* 673 P.2d 1048, 1052 (1983). "The legal effect of an unambiguous written document must be decided by the trial court as a question of law." *Id.* at 1051. "If, however, the instrument of conveyance is ambiguous, interpretation of the instrument is a matter of fact for the trier of fact." *Id.*

Here, the Participation clearly states that "Participant's Monthly Payments" shall be (1) "50% of the Gross Proceeds until [RS] receives $12,000,000"; and (2) "thereafter, 25% of the Gross Proceeds (Participant's Monthly Payment)." *Id.* ¶ 4.5. There is nothing ambiguous about this language. Yet, KMS and the original investors argue that an "ambiguity exists when paragraphs 4.4 and the last paragraph of the recitals are compared to paragraph 4.5." *KMS's Opp'n* at 5, Dkt. 36

The Court disagrees. Finding an ambiguity, as KMS and the original investors urge, would require the Court to either (1) ignore plain and unambiguous language contained in the Section 4.5, which unequivocally entitles RS to receive 50% of the proceeds until it receives $12 million, and thereafter 25% of the proceeds; or (2) insert terms in Section 4.5, which would allow KMS to reduce the distributions paid to RS to offset the phase when it received 50% of the proceeds. But "courts do not possess the roving power to rewrite contracts…." *Lovey v. Regence BlueShield of Idaho*, 72 P.3d 877 (Idaho 2003). Instead, courts must read contracts as a whole and give meaning to *all* contract terms to the extent possible. *Twin Lakes Village Property Ass'n, Inc. v. Crowley*,

857 P.2d 611, 616 - 617 (Idaho 1993).  The position KMS and the original investors propound would violate these basic tenets of contract interpretation.

By contrast, the interpretation that RS advocates reconciles and gives effect to all provisions of the agreement.  As explained by RS, the Payments Section contains two distinct distribution categories: (1) Participant's Monthly Payment, i.e. a designated percentage of the Gross Proceeds; and (2) any amount in excess of the Gross Proceeds.  The first paragraph of the Payments section sets forth the formula for disbursement of "Participant's Monthly Payments": 50% of the "Gross Proceeds until RS receives $12 million, and 25% of the "Gross Proceeds" thereafter.  "Gross Proceeds" equal "the Net Company's Share less 15%."  *Id.* at 4.5.  In other words, the formula for "Participant's Monthly Payments" is 50% of the Net Company's Share less 15% until RS receives $12 million, and 25% of the Net Company's Share less 15% thereafter.

This formula for disbursement of "Participant's Monthly Payments" differs from the formula for disbursement of "any amount in excess of the Gross Proceeds."  The formula for disbursement of "any amount in excess of the Gross Proceeds" is found in the third paragraph of the Payments section, which provides as follows:

> Participant shall be entitled to its *Participation Interest* on *any other* disbursement made by the Managing Company's [KMS SPE] in the Managing Company's sole discretion of any amount in excess of the Gross Proceeds *as if Participant owned 25% of Managing Company*.

*Id.* at § 4.5 (emphasis added).  Section 4.4 defines RS's "Participation Interest" as 25% of the Net Company's Share.   Thus, the RS's disbursement for amounts in excess of the Gross Proceeds is 25% of the Net Company's Share while RS's monthly payments are 50% then 25% of the Net Company Share minus 15%.  This analysis successfully reconciles Sections 4.4 and 4.5 – giving full force and effect to both Sections – eliminates neither Section, and pays heed to their terms' plain meaning.

 KMS responds that the ambiguity is latent.  "A latent ambiguity is not evident on the face of the instrument alone, but becomes apparent when applying the instrument to the facts as they exist." *In re Estate of Kirk,* 907 P.2d 794, 801 (Idaho 1995).  In *Cool v. Mountainview Landowners Coop. Ass'n*, for example, the Idaho Supreme Court considered whether a written easement, allowing certain landowners to use a designated beach area "for swimming and boating only," was ambiguous.  86 P.3d 484, 486 (2004). The court found that a latent ambiguity existed under the facts of the case because of the absurdity that would have resulted in interpreting "swimming" strictly as "to propel oneself through water."  *Id*. at 487.  The court noted that under such an interpretation parents would be unable to act as lifeguards for their swimming children, and swimmers could not rest on the beach or stand in the water. *Id.*  It was therefore determined that, as applied to the facts, swimming was ambiguous.  *Id.*

In this case, as opposed to *Cool*, no absurdity results if the Court were to find that the defined term, "Participation Interest" applied solely to funds in excess of the Gross Proceeds.  As described above, Section 4.4 is consistent with the third paragraph of Section 4.5.  Moreover, "the parties are presumed to have intended what the [contract] terms clearly state." *Swanson v. Beco Const. Co., Inc.*, 175 P.3d 748, 752 (Idaho 2007). Had the parties desired that the Monthly Payments be reduced below 25% for a period of time after RS received $12 million to offset the phase when RS received 50%, they easily could have included such a provision in the agreement.  But they did not, and the Participation Agreement as written plainly states that RS is entitled to 50% of the Gross Proceeds until it receives $12 million, and 25% of the Gross Proceeds thereafter.  And for any amount *in excess of the Gross Proceeds*, RS is entitled to 25% of the Net Company Share.  The Court finds no ambiguity in those terms.

## ORDER

IT IS ORDERED that

1. RS-ANB Fund, LP's Motion for Judgment on the Pleadings (Dkt. 10), filed in consolidated action 4:11-cv-00179-BLW, is GRANTED.

2. KMS SPE, LLC's Motion to Deposit Funds (Dkt. 4), filed in consolidated action 4:11-cv-00179-BLW, is deemed MOOT.



DATED: September 7, 2011

B. Lynn Winmill
Chief Judge
United States District Court