UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


| | |
|---|---|
| RS-ANB FUND, LP, | Lead Case No. 4:11-cv-00175-BLW |
| Plaintiff/Counterdefendant, | |
| v. | |
| KMS SPE LLC, LIZ AIR 6 L.L.C., JERALD M. SPILSBURY, KINGSTON PROPERTIES L.P., MIKE KINGSTON, PAUL E. AVERY, BERT BOECKMANN AND JANE BOECKMANN, TRUSTEES OF THE BOECKMANN FAMILY REVOCABLE TRUST, ANDARY INVESTMENTS 2 LLC and RGRCM LLC, | **MEMORANDUM DECISION AND ORDER** |
| Defendants/Counterclaimants. | |
| KMS SPE, LLC | Consolidated Case No. 4:11-cv-00179-BLW |
| Plaintiff/Counterdefendant, | |
| v. | |
| RS-ANB Funds, LP, | |
| Defendant/Counterclaimant. | |

**MEMORANDUM DECISION AND ORDER -** 1

RS-ANB Funds, LP,

      Plaintiff,

      v.

DAVID ORVILLE KINGSTON,

      Defendant.

Consolidated Case No. 4:11-cv-00179-BLW

## INTRODUCTION

The Court has before it the following motions: (1) Defendant Kingston Properties, L.P.'s Motion to Dismiss (Dkt. 55), filed in lead case 4:11-cv-00175-BLW; (2) Defendant KMS SPE, LLC's Joinder in Kingston Properties, L.P.'s Motion to Dismiss filed in lead case 4:11-cv-00175-BLW (Dkt. 68); and (3) Defendant David Kingston's Motion to Dismiss Adversary Proceeding (Dkt. 11), filed in the related action, Adversary No. 11-08044-JDP.   Kingston Properties asks the Court to dismiss the first, second, fourth, fifth, sixth, seventh and nine claims asserted by Plaintiff RS-ANB Fund, LP for failure to state a claim upon which relief can be granted.  In joining Kingston Properties' Motion to Dismiss, KMS SPE challenges only RS's first, second, and ninth claims. David Kingston seeks to dismiss all four claims asserted against him in the Adversary

Complaint.   The reference to the Bankruptcy Court for the Adversary Complaint has been withdrawn.

The Court has reviewed the parties' submissions and determined that oral argument will not significantly assist the decisional process.   For the reasons set forth below, Kingston Properties' Motion to Dismiss will be granted in part and denied in part, and KMS SPE's joinder in the motion is granted.  David Kingston's Motion to Dismiss the Adversary Complaint will be granted.  RS will be given leave to amend.

## BACKGROUND[1]

This action centers around a Participation Agreement dated April 1, 2009, under which RS-ANB Fund, LP purchased a right to participate in earnings derived from a failed bank's construction loan portfolio.

In January 2009, the Federal Deposit Insurance Corporation (FDIC), acting as receiver for the failed bank, transferred to an outside investment group the failed bank's commercial construction loan portfolio.  ANB Venture, LLC became the loan portfolio's new owner.  ANB Venture is wholly owned by KMS SPE, LLC, which RS alleges is controlled by David O. Kingston.  KMS SPE paid the FDIC more than $20 million for

---

[1] Unless otherwise indicated, all facts cited in the Background have been alleged in the Complaint filed in this case or the Adversary Complaint.

ANB Venture.  The FDIC retained a participation interest in ANB Venture's earnings, and ANB Venture obtained the rest.  ANB Venture's portion of the earnings ultimately goes to ANB Venture's sole member, KMS SPE.  KMS SPE, as the entity tasked with administering, servicing, and liquidating the portfolio's assets, then distributes the earnings it receives from ANB Venture to a group of investors, who are known as the original investors.  The original investors funded the purchase of the portfolio in exchange for a profit participation interest.  The original investors include Kingston Properties, which RS alleges is owned and controlled by David Kingston.

In early 2009, RS began negotiating with the original investors to obtain an interest in the portfolio.  Ultimately, the original investors agreed to sell 25% of their participation interest to RS for $12 million.   The original investors, KMS SPE, and RS executed a Participation Agreement outlining the terms of the sale and distribution of the profit proceeds to RS.  *See Participation Agreement*, Dkt. 11-1.  Under the Agreement, RS paid $12 million to the original investors in exchange for 25% of the original investors' "right, title and interest" to participate in the distributions.  *Id.* § 4.1.

A dispute between the original investors and RS about the effect of the "Payments" section of the Agreement arose not long after the parties executed the agreement.  The parties could not resolve the dispute.  So KMS SPE filed a declaratory judgment against RS, asking the Court to decide how the Participation Agreement should

be interpreted.  In addition to actively defending KMS SPE's declaratory judgment action, RS filed this action.  In this action, RS has named KMS SPE and all the original investors as defendants; it did not name David Kingston as a defendant, presumably because of David Kingston's bankruptcy filing.  Instead, RS filed an adversary proceeding against Kingston a month later.

This action, the adversary proceeding, and KMS SPE's declaratory action have all been consolidated.   This action has been designated the Lead Case.

This case involves a total of 12 claims.  Two of the claims – a claim for breach of contract and a claim for declaratory judgment – relate to the dispute over the meaning of Payments section.  RS ventures beyond the realm of contract law with its remaining 10 claims.  Specifically, RS alleges that KMS SPE and the original investors violated Rule 10b-5 of the Securities Exchange Commission and Section 30-14-501 of the Idaho Securities Act by fraudulently soliciting RS's investment in the Participation Agreement. RS's Complaint also includes a claim for breach of fiduciary duties, another for breach of the implied covenant of good faith and fair dealing, and a claim for attorney fees and costs.

RS only asserts four claims against David Kingston in the adversary proceeding. The first two claims asserted against Mr. Kingston mirror the federal and state securities

fraud claims asserted in this case.  The other two claims involve allegations that David Kingston breached his fiduciary duties.

Kingston Properties and KMS SPE ask the Court to dismiss the state and federal securities fraud claims (the first and second claims).  Kingston Properties also asks the Court to dismiss the following claims asserted by RS: (1) its fourth claim, that KMS and the original investors breached fiduciary duties allegedly owed in connection with the Participation Agreement, *id.* ¶¶ 114-128; (2) its fifth claim, that KMS and the original investors breached the Participation Agreement because Kingston did not sign the springing guaranty contemplated in section 6.2, *id.* ¶¶ 129-133; (3) its sixth claim, that KMS and the original investors breached the implied covenant of good faith and fair dealing attendant to the Participation Agreement; (4) its seventh claim, that KMS and the original investors breached fiduciary duties allegedly owed in connection with the allocation of KMS's taxable income between the original investors and RS, *id.* ¶¶ 141-197); and (5) its ninth claim, that RS is entitled to attorney fees and costs of court under section 10.8 of the Participation Agreement if it prevails in this action, *id.* ¶¶ 207-210.

In joining Kingston Properties' Motion to Dismiss, KMS SPE challenges only RS's first, second, and ninth claims.  David Kingston seeks to dismiss all four claims asserted against him in the Adversary Complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) (2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b) (6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  *Id.*  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 1950.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after *Iqbal*).[1] The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).  The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims."  *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice.  *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The Court

may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004)**.**  The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## ANALYSIS

### 1.      Rule 10b-5

RS's first claim asserts that Kingston Properties, David Kingston, and KMS SPE violated Rule 10b-5 by making certain fraudulent representations or omissions, which can be boiled down to the following: (1) David Kingston failed to disclose that he was supposedly insolvent when the Participation Agreement was signed on April 1, 2009; (2) KMS SPE and Kingston Properties led RS to believe the Participation Agreement governed RS's investment, but never intended to abide by it. *Id.* ¶¶ 68(b), 69.

To establish a valid claim under Rule 10b–5, RS must satisfy five elements: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys. Inc., Sec. Litig.,* 411 F.3d 1006, 1014 (9th Cir.2005).

Federal securities fraud complaints under § 10(b) also must satisfy stringent pleading requirements.  First, the complaint must include a short and plain statement of the plaintiff's claim. *See* Fed.R.Civ.P. 8(a).  Next, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake ...." Fed.R.Civ.P. 9(b); *See Vess v. Ciba–Geigy Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003). Under Rule 9(b), "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess,* 317 F.3d at 1106.

In addition, the Private Securities Litigation Reform Act ("PSLRA") requires a complaint to "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991 (9th Cir. 2009) (internal quotation marks omitted). "Thus, to properly allege falsity, a securities fraud complaint must now 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed.'" *Id.* at 990-91 (ellipsis points omitted) (quoting 15 U.S.C. § 78u-4(b)(1)).  "To adequately plead scienter, the complaint must now 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,'" or scienter. *Id.* at 991 (emphasis added) (quoting 15 U.S.C. § 78u-4(b)(2)).

The required state of mind is either that the defendant acted intentionally or with "deliberate recklessness." *Daou Sys.,* 411 F.3d at 1014–15.  In a securities claim under § 10(b), "recklessness only satisfies scienter" when it "reflects some degree of intentional or conscious misconduct." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999).  To adequately plead deliberate recklessness, plaintiff must allege "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999)

To survive a motion to dismiss, the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007).  In determining the cogency of the allegations, federal courts are required to consider whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 323.  In other words, courts may not rely "exclusively on a segmented analysis of scienter." *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991 (9th Cir. 2009).  Instead,

courts must "consider the totality of the circumstances," *Id.* at 992 (citing *South Ferry LP, No. 2 v. Killinger,* 542 F.3d 776, 784 (9th Cir. 2008)).

Ninth Circuit law also demands that a federal district court "conduct a dual inquiry." *Id.* First a court must "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient," the court must "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id*

Applying these standards, the sole issue before the Court is whether the Complaint, read most favorably to RS but considering all reasonable inferences, alleges particular facts giving rise to a strong inference that Kingston Properties, David Kingston and/or KMS SPE made fraudulent representations or omissions, either with knowledge of their falsity or with deliberate recklessness.

###    A.    *Non-disclosure of Kingston's Insolvency*

As noted above, RS alleges that Kingston Properties, David Kingston, and KMS SPE made several material misrepresentations and omissions. The thrust of RS's securities fraud claim, however, is that Kingston Properties, David Kingston and KMS SPE all failed to disclose to RS that David Kingston was supposedly insolvent at the time the Participation Agreement was signed on April 1, 2009. The supposed insolvency,

argues RS, was a default under agreements with the FDIC, which in turn was a default *ab initio* under the Participation Agreement.  This alleged impairment to the income stream sold to RS was not disclosed by Kingston Properties, David Kingston, or KMS SPE.  However, RS's argument derails at its basic premise – that David Kingston was insolvent on April 1, 2009 – because the factual basis for this assertion is weak; and if the foundational fact of falsity is weak, then logically, so is the inference of scienter.

In support of its assertion that David Kingston was insolvent on April 1, 2009, RS essentially relies on the following three facts.  First, David Kingston filed a bankruptcy petition nearly two years after April 1, 2009, on February 3, 2011.  Second, his bankruptcy filing occurred one day before trial in a civil action to which he was a defendant.  And, finally, that action was filed before the Participation Agreement was signed.  *Compl.* ¶¶ 53-55, Dkt. 1.

None of these facts, either alone or read together, support an inference that David Kingston was insolvent in April 2009 –  particularly given the complete absence of any allegations about Mr. Kingston's assets, liabilities, and other financial circumstances in April 2009.  Without something more, the Court cannot simply assume that Mr. Kingston's filing of bankruptcy in February 2011 meant that he was insolvent in April 2009 when he executed the Participation Agreement.  Too much can happen in two years to make that assumption.

Similarly, the fact that a civil action was filed against Mr. Kingston before he entered into the Participation Agreement – even coupled with the fact that Mr. Kingston filed bankruptcy the day before trial in that action – reveals almost nothing about Mr. Kingston's financial state in April 2009.  From these two facts, RS argues, Court can infer that (1) the action caused Mr. Kingston to file bankruptcy; and (2) KMS SPE, David Kingston, and Kingston Properties knew that the action would cause Kingston to file bankruptcy.  But RS does not describe the stakes of the civil action or the likelihood that judgment would be entered against Mr. Kingston.  Without some fact suggesting that Mr. Kingston planned in 2009 to file bankruptcy in 2011 to avoid trial, it is simply not a reasonable inference to draw.  As Kingston Properties notes: "[t]he inferential leaps are too large and too many."  *Kingston Properties Br.* at 3, Dkt. 77.

RS also argues that "based upon the Schedule C Mr. Kingston filed in the United States Bankruptcy Court, District of Idaho, Bankruptcy Case No. 11-40128, Mr. Kingston was insolvent before KMS SPE executed the Participation Agreement."  *RS's Opp'n* at 11, Dkt. 69.  RS, however, fails to explain how Schedule C shows that Mr. Kingston was insolvent on April 1, 2009.  Schedule C merely reflects the property Mr. Kingston claims is exempt and the current asserted value of that property.  It says nothing, standing alone, of Mr. Kingston's financial condition in April 2009.  RS must do more to connect the

dots between the Schedule C filed in 2011 and Mr. Kingston's supposed insolvency in 2009 to adequately plead a Rule 10b-5 claim.

### B.  *Intention to Adhere to the Participation Agreement*

The same deficiencies that plague RS's claim that Kingston Properties, David Kingston, and KMS SPE fraudulently concealed Mr. Kingston's supposed insolvency also bedevil its claim that Kingston Properties and KMS SPE never intended to adhere to the Participation Agreement.  As part of this argument, RS alleges that Kingston Properties and KMS SPE failed to tell it about their intention to (1) "profligately spend investment funds and pretend that such expenditures were made for the benefit of RS-ANB and other investors" when in fact they were not ; (2) "claim as its own expenses those necessary for the operation of Kingston Management Services, LLC…"; (3) "pay employees of the managing company far more than warranted or reasonable…"; (4) "provide the personal guarantee of David Kingston"; and (5) "account for capital and return on investment as promised."  *RS's Opp'n* at 13-14, Dkt. 69.

But "[t]he failure to carry out a promise made in connection with a securities transaction is normally a breach of contract.  It does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).  Yet, RS offers no facts to demonstrate the existence of intent in April 2009.  While Rule 9(b)

MEMORANDUM DECISION AND ORDER - 15

allows a plaintiff to plead intent generally, "a 10b–5 complaint nevertheless must allege facts that raise a strong inference of fraudulent intent." *Id.* A later disagreement about the meaning of a contract, without more, does not give rise to the inference that a party never intended to abide by it.

**C.** ***Portfolio Purchase Price***

RS has also failed to adequately plead its claim that KMS SPE, David Kingston, and Kingston Properties misrepresented the amount KMS SPE paid for the portfolio. With respect to the amount paid for the portfolio, RS alleges that Wes Adams, one of the original investors, represented that KMS SPE paid $24 million for the loan portfolio. RS, however, does not state any facts that would connect this statement to either Kingston Properties, David Kingston, or KMS SPE; therefore, RS does not state a claim against either of these defendants for misrepresenting the amount KMS SPE paid for the portfolio.

**D.** ***Conclusion***

Even read "holistically," these same allegations do not combine to create a strong inference of intentional conduct or deliberate recklessness. Rather, the Court agrees with Kingston Properties, David Kingston, and KMS SPE's suggestion that the Complaint tells a story about a dispute over the meaning or effect of the Participation Agreement – not one of securities fraud. The Court therefore concludes that RS's Rule 10b-5 claim

should be dismissed because RS has failed to plead falsity and scienter with adequate particularity.

The Court, however, will allow RS leave to amend.   It is not beyond doubt that the pleading could not possibly be cured by the allegation of other facts.  *Cook,* 911 F.2d at 247.  Thus, leave to amend shall be granted.[2]

**2.    Idaho Securities Act**

The Court finds that RS's claim for violations of the Idaho Securities Act should also be dismissed.  Rescission is the only remedy available under the Act.  Idaho Code § 30-14-509(b)(1) - (3).  If RS could prove a claim under the Act, the statutory formula for rescissionary damage would entitle RS to recover its $12 million investment, plus interest, but less its investment returns.  Idaho Code § 30-14-509(b)(1).  But RS admits that it initially invested $12 million and it has already received investment returns amounting to $14,407,120.04.  Thus, based on facts RS admits, it suffered no actual loss recoverable under the Idaho Securities Act.  For this reason, the Court will dismiss RS's Idaho Securities Act claim.  And while the Court remains skeptical that RS can salvage this claim, the Court will allow RS leave to amend both its Complaint filed in this action

---

[2] Of course, the filing of an amended complaint is not a certainty.  In determining whether to file such an amendment, counsel must be mindful of their obligations under Rule 11.

and its Adversary Complaint in the event that RS can assert such facts establishing it suffered a loss compensable under the Act.

**3.      Breach of Fiduciary Duty**

    **A.   *Kingston Properties***

RS asserts two separate claims for breach of fiduciary duty against KMS SPE and the original investors – its fourth and seventh claims respectively.  RS's fourth claim alleges that improper expenses were charged to KMS SPE.  The seventh claim puts KMS SPE to task for allocating too much of KMS SPE's taxable income to RS and not enough to the original investors.   Only Kingston Properties, as an original investor, challenges RS's two claims for breach of fiduciary duty.  It argues, simply, that the Complaint is completely devoid of any allegations, factual or even conclusory, that Kingston Properties owes RS any fiduciary duties, or that it breached any fiduciary duty owed to RS.

Kingston Properties is correct.  Neither the fourth nor seventh claim makes any mention of Kingston Properties.  RS directs all its fourth claim allegations at KMS SPE and David Kingston.  And its seventh claim allegations are directed wholly at KMS SPE. RS's failure to include even one specific allegation suggesting that Kingston Properties owed fiduciary duties to RS  – or that it breached them – warrants dismissal of these claims against Kingston Properties.  "Labels and conclusions" or "a formulaic recitation

of the elements of a cause of action" do not suffice to state a claim against Kingston Properties for breach of fiduciary duties.   *Twombly*, 550 U.S. at 555.

In its brief, RS argues that a fiduciary relationship – akin to a "broker/principal" relationship – was created as soon as Kingston Properties and the other investors initiated investment discussion with RS.  While it is true that courts have found a fiduciary relationship to exist between a broker and its customer, the Court disagrees that the relationship between Kingston Properties and RS is analogous.  A broker acts as an agent of the buyer, and often provides investment advice, thus creating a fiduciary relationship between the two. *Conway v. Pacific University*, 924 P.2d 818, 824 (Or. 1996).  The Complaint, however, contains no facts suggesting that Kingston Properties provided investment advice to RS, or acted as RS's agent in connection with the Participation Agreement.   Instead, the facts as alleged establish that RS, on its own, decided to invest in the loan portfolio in a consummate arm's length transaction.  "Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction." *Wade Baker & Sons Farms v. Corp. of Presiding Bishop*, 42 P.3d 715, 721 (Ct. App. 2002).

The Court also finds unpersuasive RS's argument that a fiduciary relationship arises between it and Kingston Properties because Kingston Management Services LLC manages the loan portfolio that generates KMS SPE's income and Kingston Properties

MEMORANDUM DECISION AND ORDER - 19

allegedly owns and manages Kingston Management.   Even if a fiduciary relationship does arise between the loan servicer and an investor in the loan portfolio, RS fails to explain the connection between Kingston Management's duties and RS's breach of fiduciary duty claims.  Does Kingston Management decide what expenses are charged to KMS SPE?  Does it decide how to allocate KMS SPE's taxable income among the investors?  If the answer to these questions is yes, RS could potentially assert a breach of fiduciary duty claim against Kingston Properties; but the complaint as written provides no answer to these questions.

RS will be given the opportunity to amend its Complaint to state specific facts establishing that Kingston Properties and RS had a special relationship such that Kingston Properties had a duty to act primarily for the benefit of RS, and Kingston Properties breached the duties it allegedly owed to RS.  *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 852 (1991).

### B. *David Kingston*

Likewise, the Court finds that RS fails to plausibly allege that David Kingston owed it a fiduciary duty.  RS articulates no basis for its bare allegation that David Kingston owes it any type of fiduciary duty.  Indeed, RS alleges no facts establishing that David Kingston and RS had any relationship at all prior to RS's decision to enter into the Participation Agreement.  And David Kingston is not even a party to the Agreement.  For

the same reasons that the Court dismissed the breach of fiduciary claim against Kingston Properties, i.e., all facts alleged point to an arms-length transaction in connection with the Participation Agreement, the Court will dismiss the breach of fiduciary claim against David Kingston. RS will be given leave to amend this claim as well.

**4.      The Participation Agreement's "Springing Guaranty" Provision**

      **A.  *Kingston Properties and KMS SPE***

RS's fifth claim relief alleges that KMS SPE and the original investors, including Kingston Properties, violated Section 6.2 of the Participation Agreement, or the Springing Guaranty Provision, which states that David Kingston would sign a personal guarantee that would be attached as Exhibit C to the Participation Agreement. RS alleges that Mr. Kingston never signed the personal guarantee, and Kingston Properties breached the provision by failing to procure Mr. Kingston's signature.

Based on these allegations, the Court finds that RS has stated a claim against Kingston Properties. As a party to the agreement, it could be inferred that Kingston Properties had a duty to procure David Kingston's signature on the personal guarantee as it was one of the conditions or promises in the contract. This is true even though the provision does not specifically identify Kingston Properties as the party responsible for ensuring Mr. Kingston signed the personal guarantee. Therefore, at this point in the proceedings, this claim will stand against Kingston Properties.

**B.** *David Kingston*

RS also asserts a claim for breach of the Participation Agreement for his alleged failure to sign a personal guaranty. But David Kingston is not a party to the Participation Agreement. An individual who is not a party to an agreement cannot be liable for its breach. *Triad Leasing & Fin.,Inc. v. Rocky Mt. Rogues, Inc.*, 224 P.3d 1092, 1097 (2009) ("Because Seller was not a party to the Agreement, it could not be liable for breach of the Agreement."). Therefore, the Court will dismiss this claim in the Adversary Complaint against Mr. Kingston. The Court can see no basis on which to grant leave to amend. Therefore, this claim against Mr. Kingston will be dismissed with prejudice.

**5.      Breach of the Covenant of Good Faith and Fair Dealing**

The Court finds that RS has also sufficiently pleaded its breach of the covenant of good faith and fair dealing claim. Rule 8 does not demand the same particularity needed to assert a securities fraud claim; instead, it only requires notice to the parties of the claims asserted against them, and to state a claim that is at least plausible. Here, RS has put Kingston Properties on notice of its claim for breach of the covenant of good faith and fair dealing and has stated such a claim that is plausible. This claim will also stand.

**6.      Attorney Fees Claim**

RS's ninth and final claim under section 10.8 of the Participation Agreement seeks an award of attorney fees and costs incurred in pursuing this action. Because a claim for

attorney fees is not an independent claim but merely a request for a specific remedy, the Court will dismiss it.

## ORDER

IT IS ORDERED that:

1. Defendant Kingston Properties, L.P.'s Motion to Dismiss (Dkt. 55), filed in lead case 4:11-cv-00175-BLW is GRANTED IN PART and DENIED IN PART. RS will have until November 21 to file an amended complaint.

2. Defendant KMS SPE, LLC's Joinder in Kingston Properties, L.P.'s Motion to Dismiss filed in lead case 4:11-cv-00175-BLW (Dkt. 68) is GRANTED.

3. Defendant David Kingston's Motion to Dismiss Adversary Proceeding (Dkt. 11), filed in the related action, Adversary No. 11-08044-JDP, is GRANTED. The Clerk shall file this decision in this case and in Adversary No. 11-08044-JDP.

DATED: November 7, 2011

B. Lynn Winmill
Chief Judge
United States District Court