UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RS-ANB FUND, LP,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>KMS SPE LLC, LIZ AIR 6 L.L.C., JERALD M. SPILSBURY, KINGSTON PROPERTIES L.P., MIKE KINGSTON, PAUL E. AVERY, BERT BOECKMANN AND JANE BOECKMANN, TRUSTEES OF THE BOECKMANN FAMILY REVOCABLE TRUST, ANDARY INVESTMENTS 2 LLC and RGRCM LLC,<br><br>    Defendants/Counterclaimants. | Lead Case No. 4:11-cv-00175-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
| KMS SPE, LLC<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>RS-ANB Funds, LP,<br><br>    Defendant/Counterclaimant. | Consolidated Case No. 4:11-cv-00179-BLW |

| | |
|---|---|
| RS-ANB Funds, LP,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID ORVILLE KINGSTON,<br><br>    Defendant. | Consolidated Case No. 4:11-cv-00179-BLW |

## INTRODUCTION

The Court has before it two motions for partial summary judgment (Dkts. 84 & 91) and a motion for a prejudgment writ of attachment and restraining order (Dkt. 111) filed by RS-ANB Fund, LP. Also before the Court are two motions for discovery (Dkts. 95 & 106). The Court has reviewed the parties' submissions and determined that oral argument will not significantly assist the decisional process. For the reasons set forth below, the Court will deny RS-ANB's motions for partial summary judgment without prejudice, grant in part and deny in part RS-ANB's application for writ of attachment and TRO, and grant the motions for discovery.

# BACKGROUND[1]

In January 2009, ANB Ventures, LLC acquired the assets of a distressed bank seized by the Federal Deposit Insurance Corporation (FDIC). The loan portfolio cost $24 million, and to accomplish its acquisition several parties contributed to the purchase in exchange for a profit participation interest. A managing company, KMS SPE, LLC, was formed simultaneously to administer, service, and liquidate the assets of the portfolio – it receives distributions from ANB Ventures, which it then distributes to the investors.

In early 2009, RS-ANB Fund, LP approached the original investors about becoming an investor in the portfolio. The original investors agreed to sell 25% of their participation interest to RS-ANB for $12 million. *Participation Agreement* at §§ 2-4, Dkt. 11-1. The original investors, KMS SPE, and RS-ANB executed a Participation Agreement outlining the terms of the sale and distribution of the profit proceeds to RS-ANB. *Id.*. Under the Agreement, RS-ANB paid $12 million to the original investors (deemed the "Current Investors") in exchange for a portion of the Current Investors' "right, title and interest" to participate in the distributions. *Id.* § 4.1.

A dispute between the original investors and RS-ANB about the effect of Section 4.5 of the Agreement – the "Payments" section – arose not long after the parties executed

---

[1] The background is derived from the Amended Complaint unless otherwise noted.

the agreement. Section 4.5 entitles RS-ANB to receive monthly payments when KMS SPE has earnings available for distribution. It provides:

> Payments shall be paid monthly from the proceeds of the Net Company's Share less 15% (the "Gross Proceeds") to the extent they are available. Each monthly payment [to RS-ANB] shall be as follows (Participant's Monthly Payment):
>
> ➢ 50% of the Gross Proceeds until [RS-ANB] receives $12,000,000;
>
> ➢ thereafter, 25% of the Gross Proceeds (Participant's Monthly Payment).

*Id.* § 4.5.

In accordance with this section, KMS SPE initially distributed 50% of the Gross Proceeds to the original investors and 50% to RS-ANB. KMS SPE continued this distribution allotment until RS-ANB had received $11.25 million from the Gross Proceeds and $750,000 from its share of a $3,000,000 "Special Distribution" by KMS SPE. *Analysis of Payment to Date*, Ex. to Townsend Decl., Dkt. 84-3. The "Special Distribution" was a return-of-capital distribution made in September 2009. *Reece Decl.* ¶ 10, Dkt. 94-2. KMS SPE counted the $750,000 disbursement in determining when RS-ANB had "receive[d] $12,000,000" for purposes of the 50% provision. *Id.* ¶ 11.

Once KMS SPE determined that RS-ANB had received $12 million, however, KMS SPE did not distribute 25% of the Gross Proceeds as RS-ANB contends it should have. *Id.* ¶¶ 14-15. Instead, KMS SPE and the original investors took the position that that Section 4.5 was intended to accelerate RS-ANB's return of its $12 million

MEMORANDUM DECISION AND ORDER - 4

investment by providing for the 50% phase, but not to **both** accelerate RS-ANB's return of its investment **and** grant RS-ANB more than 25% of the Current Investors' rights to receive distributions from KMS SPE. *Id.* In accordance with interpretation, KMS SPE began distributing less than 25% of the earnings to offset the phase when RS-ANB received 50% of the earnings, pending resolution of this dispute about the Participation Agreement's meaning. *Id.*

In an earlier decision granting RS-ANB's motion for judgment on the pleadings, the Court found that the Participation Agreement unambiguously entitled RS-ANB to 25% of the Gross Proceeds once it received $12 million – with no period when RS-ANB would receive less than 25% to offset the phase when RS-ANB received 50% of the earnings. Kingston Properties, joined by the other original investors, moved to reconsider this decision (Dkt. 80), but the Court denied this motion (Dkt. 112). KMS SPE has not yet distributed to RS-ANB Fund the Gross Proceeds it withheld to offset the 50% phase. *Reece Decl.* ¶ 15. Instead, those withholdings continue to be deposited in KMS SPE's IOLTA account. *Id.*

Now RS-ANB has filed two motions for partial summary judgment. In its first motion for summary judgment, RS-ANB argues that it is entitled to approximately $1.2 million in breach-of-contract damages and prejudgment interest. RS-ANB predicates this motion on its claim that it is entitled to $12 million in Gross Proceeds, and the $750,000

"Special Distribution" should not count towards calculating when RS-ANB "receive[d] 12,000,000." It claims a $375,000 shortfall from this dispute. RS-ANB asks the Court to award the alleged $375,000 shortfall, as well as all of the withheld Gross Proceed distributions following the 50% phase, plus prejudgment interest on all these amounts.

With its second motion for partial summary judgment, RS-ANB asks for "future damages." It seeks almost $4 million damages based on alleged breaches of Section 4.5 that RS-ANB anticipates will occur between now and the end of 2015. RS-ANB estimates these future damages based on projections of future performance KMS SPE prepared. Using KMS SPE's projections and the federal mid-term interest rate of 4.18%, RS-ANB's expert, Brad Townsend, reduced RS-ANB's portion of the estimated future stream on income to present value. *Townsend Decl*. ¶¶ 7-8, Dkt. 9-2. RS-ANB also filed an application for prejudgment writ of attachment and temporary restraining order to ensure that the funds it seeks through its partial motions for summary judgment go to it now.

KMS SPE, the original investors, and Kingston Properties oppose both motions for partial summary judgment. They argue that RS-ANB Fund cannot be awarded past damages because Kingston Properties filed cross-claims for reformation, rescission, or invalidation of the Participation Agreement, and the Court has not yet adjudicated these claims. For the same reason, they argue that RS-ANB Fund cannot be awarded future

damages.  In this vein, Kingston Properties and the Original Investors each filed a motion for discovery under Rule 56(d), asking the Court, at the very least, to defer ruling on summary judgment to allow time for discovery on these claims.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

1. **First Motion for Partial Summary Judgment – Past Damages**

    A.  *Withheld Payments*

    RS-ANB contends that it is entitled to past damages for the payments KMS SPE withheld to offset the phase when RS-ANB received 50% of Gross Proceeds. But Kingston Properties has filed cross-claims for reformation, rescission, or invalidation of the Participation Agreement, and the Court has not yet adjudicated these claims. Indeed, discovery has not yet begun on these claims. If Kingston Properties prevails on these

claims, it would nullify the damages RS-ANB now seeks.  Kingston Properties should be allowed to delve deeper into discovery on its counterclaims before the Court will grant summary judgment in favor of RS-ANB for past damages.  The Court will therefore deny RS-ANB's first motion for partial summary judgment without prejudice.

### B. *Return on Investment*

RS-ANB also argues that the Participation Agreement unambiguously entitles it to 50% of the Gross Proceeds until it receives $12 million *from Gross Proceeds distributions*.  The Court disagrees.

"The initial inquiry into whether a ... legal instrument is ambiguous presents a legal question, over which this court exercises free review." *Chubbuck v. City of Pocatello*, 899 P.2d 411, 414 (1995).  "An instrument which is reasonably subject to conflicting interpretation is ambiguous." *Latham v. Garner,* 673 P.2d 1048, 1052 (1983). "The legal effect of an unambiguous written document must be decided by the trial court as a question of law." *Id.* at 1051. "If, however, the instrument of conveyance is ambiguous, interpretation of the instrument is a matter of fact for the trier of fact." *Id.*

The Participation Agreement states that RS-ANB shall be paid "50% of the Gross Proceeds until [RS-ANB] receives $12,000,000." *Participation Agreement ¶* 4.5.  It says nothing about how or from what funds RS-ANB should be paid the $12 million before its percentage of the Gross Proceed distributions drops from 50% to 25%.  This language

**MEMORANDUM DECISION AND ORDER -** 9

could easily mean that RS-ANB is entitled to 50% of the Gross Proceeds until it recovered its $12 million investment – whether that be exclusively through Gross Proceeds distributions, or partly through Gross Proceeds distributions and partly through the other types of distributions that Section 4.5 provides.

Given that the Participation Agreement does not specify how RS-ANB should have been paid the $12 million, KMS SPE, the original investors, and Kingston Properties' position that the 50% level distributions should have stopped when RS-ANB received $12 million – even though $750,000 of that amount came from RS-ANB's share of the "Special Distribution" – is perfectly reasonable. On the other hand, it is possible that the parties intended that RS-ANB be paid $12 million in Gross Proceeds before its 50% distributions stopped. Until this ambiguity in Section 4.5 is resolved, the Court will deny RS-ANB summary judgment on this alleged $375,000 shortfall.

**2.    Second Motion for Partial Summary Judgment – Future Damages**

For the same reason that the Court found that RS-ANB should not yet be awarded past damages, it finds that it should not be awarded future damages. Kingston Properties' cross-claims for reformation, rescission, and invalidation of the Participation Agreement must first be adjudicated before the Court can award damages for either past or future breaches of contract. The Court will therefore deny RS-ANB's motion for summary judgment as to future damages without prejudice.

**3.     Motions for Discovery**

KMS SPE and the Original Investors ask the Court to grant them the opportunity to conduct discovery and more fully respond to the pending motions for summary judgment. Under Ninth Circuit precedent, it is generally the rule that where a summary judgment motion is filed so early in the litigation that a party has not had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should freely grant a motion for discovery. *Burlington Northern & Santa Fe Ry. Co. v. The Assiniboine,* 323 F.3d 767, 773 (9th Cir.2003). District courts are expected to generously grant such motions as a matter of course when dealing with litigants who have not had sufficient time to develop affirmative evidence. *Id.*

In this case, Kingston Properties has only recently filed counterclaims against RS-ANB Fund that directly bear on the issues raised in RS-ANB's motions for summary judgment. The parties have not had an opportunity to conduct discovery on these claims. The Court will therefore grant the parties' request for further discovery and, as noted above, deny without prejudice RS-ANB Fund's motions for summary judgment. RS-ANB Fund may move for summary judgment at a later date if it so chooses. The Court, however, expects that the motions will not be renewed until the parties have undertaken sufficient discovery to make such a motion meaningful. The Court also notes that it prefers all issues for summary judgment to be included in only one motion.

**4.     Motion for Writ of Attachment**

In addition to its two motions for summary judgment, RS-ANB filed an application for a prejudgment writ of attachment by which it seeks to require KMS SPE to pay $6 million into the Court in order to secure payment of the damages it claims through those motions.

KMS SPE responds that it has deposited the disputed 25% distributions into counsel's trust account, and therefore a prejudgment writ of attachment and TRO are not necessary. *KMS SPE's Opp'n to App. for Writ of Attachment* at 4, Dkt. 121. As an alternate proposal, Kingston Properties suggests that KMS SPE deposit into the Court:

> (1) now, the disputed 25% of past Gross Proceeds distributions that is on deposit in KMS's counsel's trust account; and (2) each month as the litigation proceeds, the disputed 25% of the additional Gross Proceeds that KMS SPE may accumulate. KMS is willing to do so, and all parties' interests are served if it does so.

*Kingston Properties Opp'n to App. for Writ of Attachment* at 1, Dkt. 120.

Because the Court has denied RS-ANB Fund's motions for summary judgment and its entitlement to the funds it seeks remains disputed, the Court believes what Kingston Properties suggests is the best course of action. This will prevent KMS SPE from becoming the "empty shell" RS-ANB fears without tying up amounts that the other investors are entitled to receive. The Court will therefore grant in part and deny in part RS-ANB's application and instead order KMS SPE to deposit the disputed 25% of past

Gross Proceeds distributions, as well as any disputed future Gross Proceed distributions, into the Court, into an interest bearing account controlled by the Court.

## ORDER

IT IS ORDERED that

1. RS-ANB Fund, LP's First Motion for Partial Summary Judgment (Dkt. 84) is DENIED without prejudice.

2. RS-ANB Fund, LP's Secon Motion for Partial Summary Judgment (Dkt. 91) is DENIED without prejudice.

3. KMS SPE, LLC's Motion for Discovery (Dkt. 95) is GRANTED.

4. The Original Investors' Motion for Discovery (Dkt. 106) is GRANTED.

5. RS-ANB Fund LP's Application for Prejudgment Writ of Attachment and Temporary Restraining Order (Dkt. 111) is GRANTED in part and DENIED in part as follows:

    a. the Clerk shall accept and record KMS SPE's deposit of the disputed 25% of past Gross Proceeds distributions, which is on deposit in KMS SPE's counsel's trust account;

    b. as the litigation proceeds, the Clerk shall accept and record KMS SPE's deposit of the disputed 25% of the additional Gross Proceeds that KMS SPE may accumulate each month;

c. the Clerk shall invest the deposited funds, plus any applicable interest, in an automatically renewable account, in the name of the Clerk of the Court, U.S. District Court, at an institution chosen by the Clerk's office, said funds to remain invested pending further order of the Court;

d. the Clerk shall be authorized to deduct a fee from the income earned on the investment equal to 10 percent of the income earned while the funds are held in the Court's registry fund, regardless of the nature of the case underlying the investment and without further order of the Court. The interest payable to the U.S. Courts shall be paid prior to any other distribution of the account. Investments having a maturity date will be assessed the fee at the time the investment instrument matures.

DATED: February 1, 2012

B. Lynn Winmill
Chief Judge
United States District Court