IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RS-ANB FUND, LP,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>KMS SPE LLC, LIZ AIR 6 LLC, JERALD M. SPILSBURY, KINGSTON PROPERTIES L.P., MIKE KINGSTON, PAUL E. AVERY, BERT BOECKMANN AND JANE BOECKMANN, TRUSTEES OF THE BOECKMANN FAMILY REVOCABLE TRUST, ANDARY INVESTMENTS 2 LLC AND RGRCM LLC,<br><br>    Defendants/Counterclaimants. | Lead Case No. 4:11-cv-00175-BLW<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |
| KMS SPE, LLC,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>RS-ANB Funds, LP,<br><br>    Defendant/Counterclaimant. | Consolidated Case No. 4:11-cv-00179-BLW |

| RS-ANB FUND, LP, | Consolidated Case No. 4:11-mc- |
| Plaintiff, | 07113-BLW |
| v. | |
| DAVID ORVILLE KINGSTON, | |
| Defendant. | |

**INTRODUCTION**

The Court has before it the following motions: (1) Defendant David Kingston and Kingston Properties, LP.'s Motion to Dismiss (Dkt. 140), (2) Defendant KMS SPE LLC's Joinder in David Kingston and Kingston Properties, LP.'s Motion to Dismiss (Dkt. 142), and (3) all remaining Defendants' Joinder in David Kingston and Kingston Properties, L.P.'s Motion to Dismiss (Dkt. 143).

Defendant Kingston Properties, LP renews its Rule 12(b)(6) motion as to Plaintiff's Securities Exchange Act fraud claim, its Idaho Securities Act fraud claim, and its fiduciary-duty claims (Claims 1, 2, 4, and 7 of the amended complaint), and to dismiss the balance of Case No. 4:11-cv-00175-BLW under Rule 12(b)(1) for lack of subject-matter jurisdiction, if the 10b-5 claim is dismissed. In addition, David Orville Kingston moves to dismiss the amended adversary complaint RS filed on December 5, 2011, as plaintiff in Case No. 4:11-mc-07113-BLW (Docket No. 128). Defendant KMS SPE LLC joins in Kingston Properties' motion to dismiss as to the federal and state

securities fraud claims.  All remaining defendants also join in Kingston Properties' motion to dismiss the lead case in its entirety under Rule 12(b)(1).

The Court has reviewed the parties' submissions and determined that oral argument will not significantly assist the decisional process.  For the reasons set forth below, Kingston Properties' Motion to Dismiss is granted in part and denied in part, and all joinder requests in Kingston Properties' Motion are granted.  David Kingston's Motion to Dismiss the amended Adversary Complaint will be granted.  As to the dismissed claims, the Court finds that RS has been afforded sufficient opportunity to amend its complaint, and that any further amendments would be futile; therefore, these claims are dismissed with prejudice.

RS shall file an amended complaint asserting only claims not dismissed below, so that the complaint conforms to this decision.

## BACKGROUND

The facts of this case are as stated in the previous Memorandum Decision and Order issued in this case on November 7, 2011 (Dkt. 116), and need not be repeated at length here.

In sum, Plaintiff RS-ANB Fund, LP (RS) asserts federal and state securities fraud claims against David Kingston, in the Adversary Complaint, and against Kingston Properties (Properties) and KMS SPE LLC (KMS) in this case (the lead case).  RS alleges that these parties fraudulently concealed the insolvency of David Kingston, who holds a controlling interest in each, so as to induce RS into purchasing a 25% interest in a failed bank's commercial construction loan portfolio. Additionally, RS brings fiduciary

duty claims against David Kingston, and against "all defendants" in Claims Four and Seven of this case.

This Court previously dismissed RS's federal securities claims primarily because RS "failed to plead falsity and scienter with adequate particularity" under the heightened pleading standards applicable to fraud. *Order dated Nov. 7, 2011* at 17, Dkt. 116. The parallel state securities fraud claim was dismissed because the Complaint failed to allege a compensable loss under the Idaho Securities Act. *Id.* at 17. The Court also dismissed the fiduciary duty claims brought against Kingston Properties because the Complaint failed to allege even the existence of a fiduciary duty in Kingston Properties toward RS, much less that any such duty was breached. *Id.* at 20.

Similarly, the Court found that the Adversary Complaint failed to allege facts establishing the existence of a fiduciary relationship between David Kingston and RS. *Id.* at 20-21. Ultimately, the Court dismissed all four of the claims brought against David Kingston in the Adversary Complaint for all these same reasons. *Id.* at 23.

In response to these setbacks, RS provided this Court with an Amended Complaint (Dkt. 131) and an Amended Adversary Complaint (Dkt. 128). All Defendants again seek dismissal of the fraud and fiduciary duties claim asserted against them, respectively, for failure to state a claim for which relief can be granted, and all Defendants named in the lead case seek dismissal of all the claims therein for lack of subject matter jurisdiction should the federal securities fraud claim be dismissed (Dkts. 140, 142, and 143).

# LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) (2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at

1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after *Iqbal*).1 The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004)**.** The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

# ANALYSIS

## 1.  Rule 10b-5

To establish a valid claim under Rule 10b–5, RS must satisfy five elements: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys. Inc., Sec. Litig.,* 411 F.3d 1006, 1014 (9th Cir.2005).

Federal securities fraud complaints under Section 10(b) also must satisfy stringent pleading requirements. First, the complaint must include a short and plain statement of the plaintiff's claim. *See* Fed.R.Civ.P. 8(a). Next, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake ...." Fed.R.Civ.P. 9(b); *See Vess v. Ciba–Geigy Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003). Under Rule 9(b), "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess,* 317 F.3d at 1106.

In addition, the Private Securities Litigation Reform Act ("PSLRA") requires a complaint to "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991 (9th Cir. 2009) (internal quotation marks omitted). "Thus, to properly allege falsity, a securities fraud complaint must now 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed.'"

*Id.* at 990-91 (ellipsis points omitted) (quoting 15 U.S.C. § 78u-4(b)(1)). "To adequately plead scienter, the complaint must now 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,'" or scienter. *Id.* at 991 (emphasis added) (quoting 15 U.S.C. § 78u-4(b)(2)).

The required state of mind is either that the defendant acted intentionally or with "deliberate recklessness." *Daou Sys.,* 411 F.3d at 1014–15. For a securities claim under Section 10(b), "recklessness only satisfies scienter" when it "reflects some degree of intentional or conscious misconduct." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999). To adequately plead deliberate recklessness, plaintiff must allege "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999)

To survive a motion to dismiss, the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007). In determining the cogency of the allegations, federal courts are required to consider whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 323. In other words, courts may not rely "exclusively on a segmented analysis of scienter."

*Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991 (9th Cir. 2009). Instead, courts must "consider the totality of the circumstances," *Id.* at 992 (citing *South Ferry LP, No. 2 v. Killinger,* 542 F.3d 776, 784 (9th Cir. 2008)).

Ninth Circuit law also demands that a federal district court "conduct a dual inquiry." *Id.* First a court must "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient," the court must "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id*

Applying these standards, the sole issue before the Court as to the federal securities fraud claims is whether the amended Complaints, read most favorably to RS but considering all reasonable inferences, allege particular facts giving rise to a strong inference that Kingston Properties, David Kingston and/or KMS SPE made fraudulent representations or omissions, either with knowledge of their falsity or with deliberate recklessness.

### A.    *Non-disclosure of Kingston's Insolvency*

As the Court made clear in its previous ruling on the issue of scienter, the mere fact that a creditor in David Kingston's 2011 bankruptcy had a lawsuit pending against Kingston on the date the Participation Agreement was signed is insufficient, standing alone, to support a reasonable inference that he was insolvent  on the date the Participation Agreement was executed.  *Order dated Nov. 7, 2011* at 14, Dkt. 116.  The Court explained, further, that if insolvency cannot reasonably be inferred from the facts

alleged, then it cannot be said that Kingston, or any of the entities under his control, acted with the required scienter in failing to reveal the existence of pending lawsuits to RS at the relevant time, since nothing in the record suggests that Kingston or any other defendant was under any duty to disclose the existence of such a suit.[1] *Id.*

In response to the Court's concerns, RS amended its federal securities fraud counts in both the lead case and the adversary proceeding. It did so chiefly by (1) retooling its argument that the *Zeiger* lawsuit, filed shortly before the Participation Agreement was signed, evidenced Kingston's insolvency at that time; *RS's Amd. Compl.* ¶¶ 54-66, Dkt. 131; (2) making a new, but similar, argument that a guarantee executed by Kingston and a creditor in his bankruptcy ("Corus") in 2007 had been triggered prior to the signing of the Agreement, further evidencing Kingston's insolvency; *Id.* at ¶¶ 67-77; and (3) arguing, in essence, that the triggering of the Corus guaranty and Kingston's insolvency generally can be inferred from his involvement in Las Vegas real estate ventures during the apex of the real estate crash. *Id.* at ¶¶ 70-77.

Unfortunately, none of these arguments brings anything particularly new to the table. The retooled *Zeiger* theory merely alleges that Kingston, at the time the lawsuit was filed and at least by the time the Participation Agreement was executed, necessarily knew that the cost of defending the lawsuit would, several years later, materially contribute to his slide into bankruptcy, and thus Kingston, as well as any other defendant with knowledge of his personal finances, should have concluded Kingston was insolvent

---

[1] Contrary to RS's suggestion, the Court finds nothing in any of the relevant contracts, as contained in the record, that purports to require Kingston or any entity under his control to disclose the existence of a pending lawsuit against Kingston, or which makes the mere filing of such a suit against Kingston a dissolution event or breach. *RS's Opp'n* at xiii, Dkt. 147.

and notified RS at the appropriate time. Even setting aside the questionable premise that litigation costs can be as reliably estimated as RS alleges, the fact that Kingston went on to fund his defense of the suit for almost two years and spent several hundred thousand dollars doing so belies the claim that scienter can be inferred from his silence, or that of the entities he allegedly controlled. In fact, Kingston's conduct in the aftermath of the *Zeiger* suit more strongly supports the *opposing* inference – that Kingston believed he could prevail, and did not foresee his later bankruptcy until well after the Participation Agreement was executed. Under such circumstances, the inference of scienter at the relevant time cannot be drawn. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999) (stating that the inference of scienter must be at least as strong as any opposing inference that could be drawn from the relevant facts.)

RS next argues that the Corus guaranty (also apparently revealed to RS by perusal of Kingston's bankruptcy schedules) further evidences Kingston's insolvency in or around April of 2009. This is essentially its *Zeiger* argument in thin disguise. Even setting aside the question of precisely *when* the guaranty was triggered, as well as the precise amount of the liability in question, this Court has already stated that the existence of a contingent liability several years prior to a bankruptcy filing is insufficient to support an inference that the debtor was insolvent when the contingent liability first arose. The fact that the record does not even reflect to any degree of certainty that the guaranty was triggered prior to the execution of the Participation Agreement weakens the argument even further.

Finally, RS asserts that the historic drop in real estate values occurring from 2007-2009, especially in the Las Vegas area, in combination with Kingston's exposure to the market during that time as evidenced by his bankruptcy filings, supports an inference that he became insolvent at some point during this period and remained so in April 2009, when the Participation Agreement was executed. While the bursting of the real estate bubble probably contributed to Mr. Kingston's bankruptcy filing in 2011, and may even have been its proximate cause, it cannot reasonably be inferred from these premises that Mr. Kingston was insolvent in 2009, nearly two years before his bankruptcy.

RS also argues that the requisite scienter can be inferred from Properties' and Kingston's failure to disclose their intention to breach the terms of the Agreement and to breach their various contractual and common-law duties. *Order dated Nov. 7, 2011* at 15-16, Dkt. 116. To the extent RS made any amendments to these allegations at all, such amendments are not responsive to the Court's concern that "RS offer[ed] no facts to demonstrate the existence of intent [not to adhere to the Participation Agreement]" or to demonstrate that any named defendant misrepresented the portfolio purchase price.[2] *Order dated Nov. 7, 2011* at 15-16, Dkt. 116. They are therefore insufficient to the task of salvaging RS's federal securities fraud claim.

### B. *Conclusion*

As amended, the Complaint still fails to plead adequate factual matter to support a strong inference of scienter on the part of David Kingston, Properties, or KMS SPE LLC.

---

[2] The assertion that "[b]ecause Mr. Kingston was insolvent . . . he knew he would be required to fund his personal expenses from the cash flow from the liquidation of the Portfolio" supplies no new facts, but merely suggests an inference from an inference that this Court had already deemed unreasonable (e.g. that Mr. Kingston was insolvent.) *Amd. Compl.* at ¶ 85, Dkt. 131.

The Court therefore concludes that RS's amended Rule 10b-5 claim in both the lead case and the adversary proceeding should be dismissed with prejudice, because the Court perceives no means by which a further round of amendments could salvage the claim.[3]

## 2. Idaho Securities Act

RS chose not to amend its state securities fraud claim, arguing instead that it is entitled to actual losses in the alternative to rescission. However, this Court already indicated that RS's profit on its investment in the portfolio, however disappointing it might be in proportion to RS's expectation, makes the recovery of actual damages untenable under the formula set forth in I.C. § 30-14-509(b)(3). Nevertheless, RS argues that its income stream from the portfolio has been impaired as a result of Kingston's insolvency, and maintains that it should be allowed to recover the amount of any impairment as "benefit of the bargain" damages. *Plf.'s Resp.* at 8-10, Dkt. 147. However, RS has cited to no Idaho cases that would allow the recovery of "benefit of the bargain" damages as "actual damages," and the Court can find none; nor is the Court persuaded that the federal precedents cited by RS are applicable to the state law issue raised here.

---

[3] In drawing the conclusion that further amendments to this claim would be futile, the Court notes that the scienter problem extends much further than the Plaintiff's failure to adequately support its charge that Kingston was insolvent. RH's scienter theory is built upon a veritable house of cards: first, that Kingston was in fact rendered insolvent by the events underlying the *Zeiger* litigation and the triggering of the Corus guaranty; second, that he recognized himself to be insolvent when the Agreement was signed, or legally should have had such recognition; third, that his personal insolvency actually constituted a dissolution event or event of default under the relevant agreements, such that it was actually capable of impacting the revenue stream generated from the Portfolio; fourth, that he recognized that his personal insolvency constituted such an event, and would therefore be of material interest to the investors; and, finally, that he then intentionally, or with deliberate recklessness, concealed his insolvency so as to induce RS to enter into a real estate venture which quickly turned a profit despite the poor economy.

Moreover, Properties is correct to point out that actual damages are not recoverable by a purchaser who retains ownership of the security, as is the case here. *Id.* § 30-14-509(b)(2). In any event, RS has not indicated that it has any intention to tender or sell its security, so the issue appears to be moot.

For all these reasons, and because it appears that any further amendment would be futile on this record, Claim Two of the amended Complaint and, likewise, Claim Two of the amended adversary Complaint are dismissed with prejudice.

**3.      Breach of Fiduciary Duty (All Defendants)**

The Court was highly specific in its dismissal of RS's fiduciary duty claims against Properties, as original investor: "RS will be given the opportunity to amend its Complaint to state specific facts establishing that [Properties] and RS had a special relationship such that [Properties] had a [fiduciary duty to RS], and [Properties] breached [these duties] . . ." *Order dated Nov. 7 2011* at 20, Dkt. 116. The Court noted that each of the fiduciary duty claims brought in the lead case was directed at KMS SPE and David Kingston, with nary a mention of Properties or any other "original investor." *Id.* The Court also described the transaction resulting in the Participation Agreement as one occurring at "arms-length," based upon the facts in the record, but indicated its willingness to entertain additional facts that might indicate the existence of a fiduciary relationship between RS and any of the parties named in Claims Four and Seven of the Complaint, and Claim Three of the Adversary Proceeding. *Id.* For this round of motions, KMS SPE and the original investors join in Properties' Motion to Dismiss, and adopt Properties' arguments in opposition to the existence of any fiduciary duty as their own

where applicable.  *Joinder of KMS SPE LLC* at 2, Dkt. 142; *Joinder of Original Investors* at 2, Dkt. 143.

The Court will again dismiss the fiduciary duty claims, this time as to all defendants named in the lead case, in light of the joinder of KMS SPE and the original investors.  *Id.*  Instead of supplying any additional facts, RS merely re-submitted its fiduciary duty claims in precisely the same form as before.  Remarkably, RS still fails to actually allege the existence of a fiduciary duty in any party other than KMS SPE, even though the "Claim" headings purport to include all named defendants, including all the original investors.  *Amd. Compl.* at 22-23, 25-30, Dkt. 131.

In lieu of adding more factual allegations, RS chose to extensively brief fiduciary law, in the process raising anew various arguments that the Court previously rejected in the absence of those same missing facts.  RS does make one argument that might be considered new: it argues that parties which exercised control over the consideration it paid to effectuate the Participation Agreement owed it fiduciary duties by virtue of that control.  *RS's Opp'n* at 11, Dkt. 147.  When this Court rejected RS's analogy of the relationship between Properties and itself to that of a broker/principal relationship, it did so because no facts were alleged which suggested that Properties "provided investment advice to RS, or acted as RS's agent in connection with the Participation Agreement." This remains true in the amended Complaint, not only of Properties, but also of every other defendant, including David Kingston.  A bare allegation of control over consideration paid cannot supply the factual indicia required for the finding of a fiduciary duty between parties to a contract negotiated at arms-length, even if the transaction

involves an "investment opportunity." *Id.* at 12. *See Wade Baker & Sons Farms v. Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 42 P.3d 715, 721 (Idaho Ct. App. 2002) (Noting that fiduciary duties are not ordinarily created by arm's length transactions.)

Since the complaint still fails to allege sufficient facts from which a fiduciary relationship between RS and any defendant could reasonably be inferred, and RS is clearly not in possession of the kind of facts needed to state a claim for breach of fiduciary duty under the pleading standards outlined above, Claims Four and Seven of the Amended Complaint are dismissed with prejudice.

Additionally, with respect to Claim Three in the Adversary Complaint, the Court agrees with Kingston that RS failed to link the holdings in the various cases it cited with the facts contained in the record. David Kingston may indeed be a fiduciary with respect to some or all of the defendants named in the lead case, by virtue of his control over the entities in which they are shareholders. But, as Kingston argues, RS has failed to plead any facts to suggest that RS is, literally or figuratively, a limited partner, shareholder, or member of KMS SPE LLC or of any entity allegedly controlled by Kingston.

In short, while RS does an adequate job in its briefing of arguing that Kingston is a fiduciary to *someone*, it failed to supply the facts needed to establish itself as a party to whom such duties are owed. For that reason, and because the record does not disclose any other means by which Kingston might have assumed a fiduciary role with respect to RS, Claim Three of the Adversary Complaint (Dkt. 128) is dismissed with prejudice in light of the evident futility of any future amendments.

4.    **Supplemental Jurisdiction over the Remaining Claims**

As indicated previously, all the defendants named in the lead case have asked this Court to dismiss the balance of the case for lack of subject-matter jurisdiction if the federal securities fraud claim is dismissed. For the reasons explained below, the Court declines to do so, and will instead exercise its discretion so as to retain supplemental jurisdiction over the remaining state-law claims in the lead case of this consolidated action.

A.    **28 U.S.C. § 1367(a), (c).**

A federal district court's ability to claim supplemental jurisdiction over a state law claim lacking an independent jurisdictional basis is derived from its Article III judicial powers and from 28 U.S.C. § 1367, which essentially codifies the holdings of the Supreme Court in *United Mine Workers v. Gibbs*, 338 U.S. 715 (1966). In considering whether to exercise its discretion in taking supplemental jurisdiction over such claims, courts conduct a two-step analysis, asking: (1) do the state and federal claims derive from "a common nucleus of operative facts?"; and (2) if they are sufficiently related, do "considerations of judicial economy, convenience and fairness to litigants" and the duty to "avoid needless decisions of state law" counsel for, or against, the court taking or retaining such jurisdiction? *Gibbs*, 338 U.S. at 726; 28 U.S.C. § 1367(c).

Notwithstanding the *Gibbs* factors, should the court decide to decline jurisdiction it must ground its decision on one of the four bases provided under § 1367(c) – "(1) the [state law] claim raises a novel or complex issue of state law; (2) the [state law] claim substantially predominates over the claim or claims over which the district court has

original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)-(4).

With respect to the third scenario under § 1367(c), that in which the court has dismissed all claims over which it has original jurisdiction, the *Gibbs* factors will generally weigh in favor of dismissal of the pendent state-law claims, especially when such dismissal has occurred before trial. *Gibbs*, 383 U.S. at 726. However, dismissal is not automatically required merely because such a scenario has taken place. *Acri v. Varian Assoc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, (1988)). Indeed, the 9th Circuit has long recognized that the prevention of waste and duplicative litigation are often of central importance to the decision whether to retain jurisdiction over pendent claims after dismissal of all federal claims. *See, e.g., Schneider v. TRW, Inc.*, 938 F.2d 986, 994-995 (noting that "we have consistently upheld decisions to retain pendent claims on the basis that returning them to state court would be a waste of judicial resources," and noting the central importance of judicial economy to the decision whether to retain the pendent claims); *see also Otto v. Heckler*, 802 F.2d 337, 338 (9th Cir. 1986).

## B. Defendants' Motion under FRCP 12(b)(1)

With the foregoing principles in mind, the Court will deny Defendants' motion under Rule 12(b)(1) to dismiss the balance of the case for lack of subject-matter jurisdiction, and will instead exercise its discretion to retain its supplementary jurisdiction over those state-law claims which have not been dismissed herein under Rule 12(b)(6).

First, the Court concludes that its initial exercise of supplementary jurisdiction over the state-law claims in the lead case was proper under § 1367(a). The Court notes that even though it has now dismissed the federal securities fraud claim upon which its original jurisdiction was premised, the Court has not gone so far as to suggest that the claim amounted to nothing more than a jurisdictional gambit or other artifice. Rather, it appears that RS simply cannot meet the high burden imposed upon plaintiffs in fraud cases. Under those circumstances, the Court must concede that the action was properly filed in federal court as an initial matter.

Second, the supplementary state-law claims are properly viewed as merely another facet of the same controversy: RS's belief that it has not received its full entitlement under the Participation Agreement. Whether the theory by which RS seeks its recovery is labeled fraud, breach of contract, breach of fiduciary duty, or something else, each claim in the lead case is derived from a common nucleus of operative facts surrounding the Participation Agreement and its implementation. Defendants, especially, have made it plain that they view the fraud claim as a doppelganger of the breach of contract claim, *see, e.g., KMS SPE LLC's Reply* at 9, Dkt. 157, and RS itself practically conceded as much when it stated that the measurement of its fraud damages was the same as that of its contract damages. *RS's Opp'n* at 10, Dkt. 147. For all these reasons, the Court concludes that the state law claims are part of the same case or controversy as the federal claim, such that the requirements of § 1367(a) are satisfied, and that it may therefore retain supplemental jurisdiction in the exercise of its discretion.

The Court is aware that *Gibbs* and its progeny, including the cases cited by Properties in its briefing, generally counsel district courts to decline to retain supplementary jurisdiction in the scenario presented here, in which the sole claim over which the court has original jurisdiction is dismissed before trial.  However, the Court concludes, after considering the *Gibbs* factors, that considerations of judicial economy, convenience, fairness, and the prevention of waste warrant its retention of the surviving pendant claims.  Although this case has not progressed very far in purely procedural terms, the parties and the Court have invested considerable judicial resources already in the conduct of the litigation, which is nearly a year old to this point.  *See, e.g., Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523 (9th Cir. 1989) (upholding a district court's retention of jurisdiction on judicial economy grounds despite the case having been in federal court only four months.)  In both the lead case and in the consolidated cases, the Court has entertained numerous motions, including motions for judgment on the pleadings, motions to dismiss, and motions for summary judgment; has entered and amended a scheduling order; has authorized discovery; and has established a fund administered by the court for deposit of contested sums during the litigation.  Further, the Court has rendered legal conclusions on the ambiguity of key provisions of the Participation Agreement (Dkt. 79).[4]  Considering all these factors, judicial economy would be best-served by the Court retaining its jurisdiction over the surviving claims in the lead case.

---

[4] Although the Court does not "merge" the consolidated cases for purposes of justifying supplemental jurisdiction, in a purely practical sense the efforts undertaken in the consolidated cases assuredly do "count" in the analysis of the *Gibbs* factors undertaken here.

In addition to this substantial commitment of time and resources, the Court has not heard any reason why it would be unfair to the parties for it to retain jurisdiction in this matter, and sees none. To the contrary, any unfairness would probably trend in the opposite direction, given the hardship and expense that would accrue to the parties if they were required to restart this litigation in state court.

Finally, the Court concludes that the interests of judicial economy outlined above are sufficiently strong so as to outweigh the Court's natural reluctance to decide matters of state law. As indicated above, the Ninth Circuit has frequently upheld the retention of jurisdiction in like situations in which the district court found that the goals of judicial economy predominated. That is also the case here. For all these reasons, the Court will deny Defendants' motions to dismiss the surviving claims in the lead case under FRCP 12(b)(1).

## ORDER

IT IS ORDERED THAT:

1. Defendant Kingston Properties, L.P.'s Motion to Dismiss (Dkt. 140) is GRANTED IN PART and DENIED IN PART.

2. Defendant David Orville Kingston's Motion to Dismiss (Dkt. 140) the Amended Adversary Complaint RS filed on December 5, 2011, as plaintiff in Case No. 4:11-mc-07113-BLW (filed as Dkt. 128 in lead case), is GRANTED.

3. Defendant KMS SPE, LLC's Joinder in Kingston Properties, L.P.'s Motion to Dismiss filed in lead case 4:11-cv-00175-BLW (Dkt. 142) is GRANTED.

4.  The Joinder in Kingston Properties, L.P.'s Motion to Dismiss filed in lead case

    4:11-cv-00175-BLW (Dkt. 143) by Defendants Liz Air 6, LLC, Jerald M.

    Spilsbury, Mike Kingston, Paul E. Avery, Bert Boeckmann and Jane Boeckmann,

    Andary Investments 2, LLC, and RGRCM LLC is GRANTED.

5.  RS shall file a Second Amended Complaint asserting only claims not dismissed

    herein so that the complaint conforms to this decision **by May 1, 2012**.

DATED: April 16, 2012

B. Lynn Winmill
Chief Judge
United States District Court